The consequence has been that a large number of educational institutions have been founded and liberally endowed, upon the faith of this wise state policy, and up to the present case no attempt has been made, so far as the court is aware, to place the burdens of taxation upon them, except as to real estate diverted from educational use.

Such a course would, in our opinion, be suicidal, and has never been contemplated by the Legislature.  It would ruin one of the main sources of our power and influence as a state, and relegate the commonwealth to a less enlightened age.

Entertaining these views, therefore, as to the true construction of the statutes, and the policy of the state, the demurrer to the petition will be overruled.

*C. H. Kyle* and *C. C. Shearer*, for plaintiff.

*Charles Howard*, for defendant.

---

## NEGLIGENCE IN RAISING HEAVY OBJECT.

[Circuit Court of Huron County.]

LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO. v. ROSE WHIDDEN, ADMINISTRATRIX.

Decided, 1901.

*Negligence—Oral Rules Governing Work in Shops—Dangerous Method Adopted by Servant for Doing Work—Defective Appliance—Negligence and Injury Without Casual Connection—Assumption of Risk —Question to Expert Witness Need Not State Entire Case—Exculpatory Evidence Necessary to Remove Presumption of Contributory Negligence—Charge of Court.*

1. In questioning an expert witness as to whether a certain method of doing work would be safe, it is not necessary to state the entire case in one question.
2. A presumption of contributory negligence arises where there were two ways of doing a piece of work with reasonable dispatch, one absolutely safe and the other not, and the person injured pursued the latter method; and to remove such presumpion requires exculpatory evidence.
3. Where one has used a certain appliance frequently for a long period, he may fairly be presumed to know its weakness, if it has any;

and likewise if he is familiar with fresh paint he may be presumed to know that it renders a surface slippery.

4. A claim that the master was negligent in assigning two instead of three men to do a piece of work will not avail where there was no casual connection between the alleged negligence and the injury sustained by one of the men, nor where the risk was assumed by the men voluntarily and with full knowledge of the danger involved.

5. A charge to a jury is misleading when it singles out different acts as not sufficient alone to entail liability; it should not attach undue imporance to any particular items of evidence, and the rules stated should be not only correct in the abstract but applicable to the issue in hand.

MOONEY, J. (sitting in place of Hull, J.); HAYNES, J., and PARKER, J., concur.

Heard on error.

In the court of common pleas Rose Whidden, administratrix, etc., as plaintiff, filed her petition and amended petition against the Lake Shore & Michigan Southern Railway Company, defendant, and therein alleged, in substance, that on June 17, 1897, her intestate, William Whidden, was in the employ of the Lake Shore & Michigan Southern Railway Company, in the shops of that company in this city, and that on that day he was called from his tank upon the floor of a locomotive tender; that in the performance of that work but two men were engaged, and that the appliances used for lowering the tank was a lever jack; that at the time in question there was no rule requiring the presence of any one to superintend the doing of the work, and that not enough men were employed in and about the doing of it to secure safety to the persons so engaged; that while so engaged, by reason of the want of a rule that should have been made by the railway company requiring three persons to be present, by reason of the absence of a superintendent, or one to oversee the work, by reason of the appliances used which were not suited to the work to be done, and by reason of the fact that the bottom of the tank had been recently painted, which fact was known to the railway company and not known to William Whidden, and while so engaged the jack slipped from under the tank and it fell upon the head of William Whidden and injured him so that he died, and the prayer is for a recovery of dam-

ages in this cause of action in the sum of ten thousand dollars.

To the petition and amended petition constituting this cause of action, there was filed by the defendant named, an answer in which it is first denied, in substance, that the defendant was guilty of any negligence as averred in the petition; and then as an affirmative defense it is charged that whatever injury occurred to the plaintiff's intestate was due or was contributed to by negligence of William Whidden himself; and next it is charged that at the time of his entering into the employ of the company he signed a written contract by the terms of which he agreed to inspect all appliances that might be used in any of the duties, to the discharge of which he might be called, and that he would report any defect or insufficiency of such appliances to the company. He also further agreed that he would not permit an order or direction of any superior officer to prevent him from taking time to make such inspection, examination, or to make such report.

For a third defense it is substantially averred that if the plaintiff was injured as alleged, it was due to the risk assumed in the employment, or in the discharge of the duties about which he was engaged.

The plaintiff, by way of reply, denies all three of these substantive or affirmative defenses set out in the answer, and upon the issues thus joined the case was tried to a jury, which resulted in a verdict for the plaintiff.

A motion for a new trial, one of the grounds of which was that the verdict was not sustained by sufficient evidence, was filed and was overruled. A bill of exceptions embodying all the evidence, requests to charge, the action of the court thereon, and the charge as given by the court, was filed and now error is prosecuted here by the defendant below to reverse this judgment.

The errors assigned are: There was error in overruling the motion for a new trial; that the verdict and judgment are against the weight of the evidence, and not sustained by sufficient evidence; that there is error in the admission and rejection of evidence to the prejudice of plaintiff in error; that there is error in the refusal of the court to charge as requested by de-

fendant below; and also error in the granting of the requests of the plaintiff below to charge before argument, as also in the general charge, as given.

The number of exceptions that have been called to the attention of the court are very great, and it will not be possible within any reasonable time to advert to each singly.

We may say, with reference to the objections to the evidence, that we find, except in a single instance, no valid ground of objection and exception by the plaintiff in error.

The question most made was as to the completeness of the question that was put to several witnesses called as experts, where they were asked: ''Would it be safe for two persons to be assigned to do this work; would it be safe to use a lifting jack of the kind exhibited to the jury, in doing the work in the manner in which it was agreed by witnesses on both sides that the work was done?''

It is objected, to that question, that it was not stated: ''Would it be safe for a man whose head was under the tank at the time, or would it be safe for the man who was doing the work?''

The plaintiff below was not bound to state his entire case in one question to the witnesses and ask whether it was safe, as ordinarily understood to be, was it safe for persons engaged in the work. To ask whether it would be safe for a person whose head was under the tank at the time it was being lowered, would not be necessary, the question being, generally, would it be generally safe for a person engaged in doing the work, being in a proper position; and if it was believed by the defendant below that this question was incomplete and did not meet the case fully, as it would be finally met and finally given to the jury, it was quite proper and quite usual to develop any additional facts by cross-examination as was done in every instance. We find upon this line of questions and the ruling of the court permitting this question to be answered, no error to the prejudice of the plaintiff in error.

On pages 131 and 132 of the record we find exception 70:

''Q. You may state to the jury whether or not there was any rule or instruction in this shop or in the tank shop or in the round house with reference to the use of wood—as a sort of

washer between the foot of the jack and the metal, a heavy metal substance to be raised?

"A.   Yes, sir.

"Q.   If so, how long had it been in force, or in existence?

"Mr. Andrews: I object to the question.

"Judge Wickham: I expect to show that the rule was communicated to Mr. Whidden; that it was not a written rule, but a verbal rule.   I expect to show that he was instructed to lift.

"Mr. Andrews: I object to that statement.

"Court: I am inclined to think that upon this point, it would not be competent to show an oral rule communicated by Mr Bradeen to the foreman.

"Judge Wickham: We except to the ruling of the court."

The effect of that action of the court was to deprive this defendant from showing that an oral rule was made, was in existence and was actually communicated to the plaintiff's intestate in the court below.   The plaintiff below grounded her right to recovery upon an oral order to do the work.   Actions of this kind are most commonly grounded and are frequently sustained upon oral orders.   There is no requirement of law that orders to employes in railroad shops, any more than in any other department of industry should be directed by written rules, and we are quite clear that this question should have been answered, and that the exclusion of the answer under the statement was error.

After the close of the testimony it may be said with reference to this particular question—afterwards, this witness, in another form, was permitted to answer a question that to some extent met the offer of proof made by the defendant below, but not entirely so.   While perhaps upon the record, as it stands with the other questions and answers, we would not feel that the error was such as to reverse this judgment, yet, in passing, for reasons that will appear further on, we desire to express the opinion that this question, in the form in which it was stated, should have been answered.

The second request of the plaintiff to charge, without reading it, because it is lengthy, is perhaps a correct statement of an abstract principle of law, but inasmuch as it does not embody or state the necessity of any casual connection between the fact stated to be negligence and the injury here in question, it seems

to be viewed as an abstract direction embodying the law of some case, but not applied by its language to this case. It could not aid the jury, and we think should not in the form in which it was presented have been given.

The same as to the third request; and the same as to the fourth, fifth and sixth requests of the plaintiff. Some of these are found to be incorrect statements of law. Others are found to single out particular items of evidence and to attach, as we think, undue importance to such particular items of evidence, for we do not conceive it to be the purpose of the law to permit a charge before argument, to authorize parties to single out particular theories and particular parts of the evidence and hold them up to the jury and thus give them undue importance in the case, and certainly mislead the jury. We are all of the opinion that these requests, when presented, should be the statement of general rules, not only correct in the abstract, but so covering the case as not to give a one-sided view of some particular theory of counsel, or to attach undue importance to some particular items of evidence.

What has been said with reference to the plaintiff's requests will apply to all but one of the requests of the defendant. The plaintiff, in her petition, had charged that several things were done, and that as a result of this or of these several negligent acts injury happened. The defendant below, singling these out one by one, with the request to the court to charge the jury that any one of them standing alone would not, as a matter of law, entail liability. That was unfair, misleading and improper charge to be given, as we think, to the jury.

However there was a request, number four, by the defendant below, which is in this language:

"That if the jury find that the tank in question was resting at one end upon the foot of the jack, with no other support, at an elevation at that end of from ten to fifteen inches, and that Mr. Whidden, for the purpose of reaching a piece of 'blocking' wholly within the coal pit, placed his arm and head under the tank, and that that piece of 'blocking' could have been procured by him with absolute safety to himself, by entering the coal-pit at its open end, a presumption of negligence on his part would arise; and that before the plaintiff can recover the burden

rests upon her to remove such presumption and show that he was exercising ordinary care by a preponderance of the evidence.''

It may be doubtful whether or not, as an abstract proposition of law, as a statement of law applicable to all cases, this would be true; that is to say, whether the rule existed to the extent claimed by counsel for plaintiff in error in this case, that in all cases when there are two ways of doing work, or of accomplishing a given result, one absolutely safe and another attended with danger, that the adoption of the plan that is attended with danger raises the presumption of the negligence of the plaintiff. But in this case the evidence is not in dispute so far as applies to this instruction, and it amounts to a request; therefore, that if there were two ways of accomplishing the work with reasonable dispatch, that is a proper qualification of the rule.

To make my meaning clear, it is always possible with absolute safety to cross a railroad track. One might be attended by a messenger sent ahead to see that there is no danger; but if, instead of doing that, and for the purpose of pursuing his journey and his business with reasonable dispatch, he does not do it, because he does not surround himself with all precautions, and because he does not take the course that is in all situations absolutely free from danger, does not raise the presumption. But here, there is no showing in evidence but that this work to be done could have been done with reasonable dispatch by procuring blocking in some other way than by reaching through under the tank; and so we think that whether this request states a rule which is correct in all cases or not, under the conceded facts, or undisputed testimony, unquestioned evidence in this case, it does state a fact, and that is the purpose of an instruction to a jury not to state a general proposition of law that is correct, but to deliver instructions which will aid the jury in arriving at a proper verdict and such as the law requires. We think this request should have been given, and that its refusal was error.

We think that the criticisms of the general charge that were made in argument are not well taken; that the general charge fairly covered the case, and that in the absence of any request

to make more particular statement, or in the absence of any specific objection at the time to particular language, that the general charge or the general result of the charge to the jury must have been to have given them proper information and in the light of which they should have arrived at a proper and just conclusion.

This leaves undisposed of the question as to whether or not this verdict is sustained by sufficient evidence. Many of the facts, and we think enough of the facts to dispose of this question, are not in serious dispute, although there may be slight matters of evidence against it. From the uniform trend of the testimony, and sustained as we think by the clear weight of the evidence, these facts may be said to have been presented to the jury and should have been determined by them to be the controlling facts in the case.

That William Whidden, plaintiff's intestate, a young man thirty-two years of age, of more than average intelligence, employed about these shops for three years or about that time, and for one year, or for one year and more, accustomed to be called from work in the round house which he was required to perform ordinarily, to assist in the lowering of tanks and raising of tanks from the floor of tenders; that he had on more than two dozen times used jacks and been engaged in blocking up and lowering down tanks onto the floor of the tenders; that on this day a jack was used; that it was placed under the tank, the tank being at an angle of from two-thirds of an inch to an inch to the foot; that it was placed in position by Whidden himself; and after the tank had been raised slightly from the blocking, he left the jack and the pit of the tender, got down from the tender floor onto the floor of the shop for the purpose of blocking the tank, for the general purpose of the employment; that when he got down to the side on which he was to place the blocking in position, there was no blocking there on that side; that blocking was situated in abundance at the other side of the tender; that it would have required six or eight steps for him to procure it; that, so far as the evidence shows, at that time the jack was securely in place and there was no apparent necessity of proceeding speedily to procure the blocking; that

for the purpose of gaining possession of the blocking he reached his arm under the tank thus raised, and between the tank and the floor of the tender, he placed his head under the tank; and while in that position, for some reason not explained here, the jack slipped and the tank fell down until its further progress was arrested by the goosenecks, and caused the injury which resulted in the death of Whidden.

We have said, in sustaining the requests of defendant for charge, that these facts raised a presumption of contributory negligence of William L. Whidden; the burden of proof then, under the well known rules of law, was for the plaintiff in the court below to remove this presumption, and that evidence, from the very requirement of the rule, must be exculpatory; it must show some reason; it must sustain some excuse; it must appear from other evidence that while this seems to be negligence, and that it seems William L. Whidden took the risk, that yet under the peculiar surrounding circumstances that the result does not follow.

We look in vain in this record for such excusing circumstances. It is in evidence, or it is suggested that the .jack slipped, but it is in evidence on the part of the plaintiff below and rather emphasized, that the jack frequently slipped, and if that is true, if Whidden used it for more than two dozen times, it is not fair to presume, in the absence of all testimony to the contrary, that he knew something of the weakness of the jack in that particular? If the jack did not slip, if it was strong and did not slip, then the cause is unexplained in the evidence. If it frequently slipped, as the plaintiff's own testimony below tends to prove, then Whidden should have known it.

It is suggested that the paint caused it to slip, but for two hours on that morning, or about that time, Whidden was working around that tank; he had lowered it and raised it and had placed the tank in the position which it was at the time the injury happened. Now, if this paint was not dry, if it was soft, if it was said that the jack would slip when brought in contact with it, should not the fact that he had been engaged about the tank be some evidence of knowledge upon his part? But then the reason appears that the jack, if it slipped, should

have slipped in the opposite direction from what it did. It slipped toward its bearing instead of away from it, and certainly that manner of falling could not tend to sustain the contention made by the defendant in error here, that the slipping was due to the presence of paint.

It is claimed that two men only were employed instead of three about this work. If that is true Whidden knew it. He went there, and there is no evidence that at any time for those two dozen times, that any more than two men were employed, and the weight of the evidence in this record shows clearly that the only difference between employing three men and employing two, is that when three men are employed the work can be done more quickly than when only two men are employed.

However, if three men had been employed, it does not appear that this injury would not have happened. If three men had been employed and one of them had been standing at his jack, still, if Whidden had placed his arm and his head under this tank, he would not have had time, by reason of any precaution or by reason of any warning given at the time, to have escaped. In other words there is no causal connection between this negligence, if there was negligence in not employing three men, and the injury that happened. The same is true with reference to rules.

Upon the whole case, while, as in all cases of this kind, we view this injury and death as a calamity to this family, yet we must recognize that the defendant below and the plaintiff in error here, is not an insurer; that the law does not exist for the purpose of distributing the burden upon persons who are guiltless. Under the rules of law, we must hold that Whidden, when he placed his arm and his head under this tank and was killed while he was in that position, can not recover; he could not, if he had survived, recover, and his administratrix can not recover, unless from the evidence there is something shown to excuse, or what seems to us to be clear evidence raising the presumption of his negligence.

Upon the whole case, for the reasons indicated, for error in excluding the evidence that has been indicated, in charging the requests of the plaintiff below that have been pointed out, and in

the refusal to charge the request by the defendant, because the verdict and judgment are not sustained by sufficient evidence, the judgment of the court below will be reversed and a motion for a new trial will be sustained and the cause remanded to the court of common pleas for further proceedings according to law.

*Andrews Bros.*, for plaintiff in error.

*C. P.* and *L. W. Wickham*, for defendant in error.